## STATUS OF PURCHASER OF STOCK ISSUED BY CONSTITUENT COMPANY AFTER CONSOLIDATION.

[Circuit Court of Cuyahoga County.]

GEORGE H. WORTHINGTON v. CLEVELAND CITY RAILWAY.*

Decided, July 13, 1904.

*Evidence—Admissibility of Personal Declarations of Agent Against the Principal—Corporations—Stock Issued by a Constituent Company After Consolidation Spurious—Principal not an Innocent Bona Fide Purchaser of Stock—When Facts Known to His Agent Should Put Him on Inquiry.*

1. Declarations by an agent are not admissible against the principal unless made in performance of the business of the principal; and when the transfer agent of a consolidated company, to secure a personal loan for himself or interests which he represents, transfers stock in one of the constituent companies and promises to exchange such shares for shares in the consolidated corporation, such promise is not admissible against the consolidated corporation in an action to compel such exchange.

2. Stock issued by a company after its consolidation with another company has been completed is spurious; and one who was a shareholder in one of the constituent companies and had his stock transferred into the stock of the consolidated company is presumed to be acquainted with all the facts, and when acting as agent for another he obtains stock which is spurious because issued after consolidation and the surrender of the charter of the issuing company, his principal can not be held to be an innocent *bona fide* purchaser of such stock.

W. W. Boynton, for plaintiff, contended that a constituent company remains in existence with the right to transfer stock from one owner to another, until floating indebtedness is paid off, although the consolidated company is organized and in operation as a railroad company. *Compton* v. *Railway*, 45 Ohio St., 592; *Railway* v. *Garrett*, 50 Ohio St., 405; *Cincinnati, N. O. & T. P. Ry.* v. *Bank*, 56 Ohio St., 351; *Edison Elec. Light Co.* v. *Electric Co.*, 35 Fed. Rep. 233; *Buell* v. *Railway*, 57 N.

---

* Affirmed by the Supreme Court without report, *Worthington* v. *Railway*, 75 Ohio State, ——.

Y. Supp., 111; *In re Utica Nat. Brew. Co.*, 154 N. Y., 268; *Bishop* v. *Brainerd*, 28 Conn., 289; *Chicago, S. F. & C. Ry.* v. *Ashling*, 160 Ill., 373; 10 Cyc., 302; Noyes, Intercorporate Relations, Secs. 58, 59, 62; Killiwell, Stock & Stockholders, 383.

As to transfer agent's duties, and liability of the consolidated company for his false representations, there was cited: *Griswold* v. *Haven*, 25 N. Y., 595 (82 Am. Dec., 380); *New York & N. H. Ry.* v. *Schuyler*, 34 N. Y., 30; *Farmers & M. Bank* v. *Bank*, 16 N. Y., 125 (69 Am. Dec., 603); *Armour* v. *Railway*, 65 N. Y., 111 (22 Am. Rep., 603); *Parker* v. *Saratoga Co. (Supvrs.)*, 106 N. Y., 392; *Railway* v. *Bank*, 56 Ohio St., 351; *Combes* v. *Chandler*, 33 Ohio St., 178; *McNeil* v. *Bank*, 46 N. Y., 325 (7 Am. Rep., 341); *Moore* v. *Bank*, 55 N .Y., 41 (14 Am. Rep., 173); Pomeroy, Leg. Rem., 156-163; *Citizens' Sav. Bank* v. *Blakesley*, 42 Ohio St., 645; *Pittsburg, C., C. & St. L. Ry.* v. *Lynde*, 55 Ohio St., 23; *Stranaham Bros. Catering Co.* v. *Coit*, 55 Ohio St., 398; *Cincinnati, N. O. & T. P. Ry.* v. *Bank*, 56 Ohio St., 351; *Lickbarrow* v. *Mason*, 2 Term, 63; *North River Bank* v. *Aymar*, 3 Hill (N. Y.), 262; *Bank of Batavia* v. *Railway*, 106 N. Y., 195; *Bridgeport Bank* v. *Railway*, 30 Conn., 231; Mechem, Agency, Section 739; Story, Agency, Section 452; Beach, Priv. Corp., Section 488; Story, Partnership, par. 108.

In application of the rule of equitable estoppel, that where one of two innocent persons must suffer from the wrongful act of another, he must bear the loss that placed it in the power of such other to do the wrong. *McKenzie* v. *Steele*, 18 Ohio St., 38; *Citizens' Sav. Bank* v. *Blakesley*, 42 Ohio St., 645; *Ensel* v. *Levy*, 46 Ohio St., 255; *Pittsburg, C., C. & St. L. Ry.* v. *Lynde*, 55 Ohio St., 23; *Schurtz* v. *Calvin*, 55 Ohio St., 274; *Stranahan Bros. Catering Co.* v. *Coit*, 55 Ohio St., 398; *Cincinnati, N. O. & T. P. Ry.* v. *Bank*, 56 Ohio St., 351; *Dezell* v. *Odell*, 3 Hill (N Y.), 215; *Griswold* v. *Haven*, 25 N. Y., 595 (82 Am. Dec., 380); *Farmers & M. Bank* v. *Bank*, 16 N. Y., 125 (69 Am. Dec., 678); *New York & N. H. Ry.* v. *Schuyler*, 34 N. Y., 30; *Continental Nat. Bank* v. *Bank*, 50 N. Y., 575; *Titus* v. *Turnpike Road*, 61 N. Y., 237; *People* v. *Bank*, 75 N. Y., 547;

*Fifth Ave. Bank* v. *Railway*, 137 N. Y., 231; *Allen* v. *Railway*, 150 Mass., 200; 11 Am. & Eng. Enc. Law (2d Ed.), 422.

LAUBIE, J. (sitting in place of HALE, J.); MARVIN J., and WINCH, J., concur.

Appeal from Cuyahoga Common Pleas Court.

The case of George H. Worthington against the Cleveland City Railway Company is here on appeal. The action is for the purpose of compelling the defendant to issue a number of shares of stock to the plaintiff in exchange for stock of the Cleveland City Cable Company, or, if the court finds that that can not be ordered done, he asks for judgment for the value of the stock which he claims to hold.

The claim is based upon the fact that the Woodland Avenue & West Side Railroad Company and the Cleveland City Cable Company had consolidated in 1893, and that provision was made by which shares in certain proportion were to be issued to the stockholders of each company by the consolidated company in exchange for the stock of the constitutent companies; that after the consolidation the plaintiff obtained these certificates or shares of stock in the cable company from John J. Shipherd, as security upon certain bonds that he had loaned to John J. Shipherd, doing business under the name of Charles H. Potter & Company, and who was also the transfer agent of the consolidated company, defendant; and that he is entitled, therefore, to have the stock of this constitutent company transferred into shares of stock of the consolidated company.

It seems to be assumed on both sides, and, indeed the action of the plaintiff is founded upon the assumption, that this consolidation was authorized by, and subject to, the conditions of Section 3384, Revised Statutes, which provides for the consolidation of railroad companies, and we, therefore, assume the same.

Now, the plaintiff does not seek such relief, or to recover by reason of any act done by John J. Shipherd for the defendant as its transfer agent, but upon declarations he made at the time he delivered such stock certificates to plaintiff. Shipherd, as

the transfer agent, was authorized, when the question as to the amount of stock that a stockholder in the Cleveland City Cable Company was to receive, and the amount of money he was to pay had been determined by the board, to accept and cancel the stock of the Cleveland City Cable Company, and to issue to the stockholder the requisite number of shares of the stock of the Consolidated Company to which he was entitled, and blank certificates of stock, signed by the proper officers, were in his possession.   The facts are as follows:

Worthington was loaning to Shipherd certain bonds of the Columbus City Railroad Company for the purpose of aiding that company in the discharge of its floating debt, Shipherd being the president of that company; and, as security therefor, and for the return of these bonds, Shipherd delivered to him these certificates of stock in the Cleveland City Cable Company—stock which apparently, on its face, belonged to John J. Shipherd himself, and which the defendant claims was spurious.   Mr. Worthington did not himself make this contract, but he did it through Mr. Painter.   Painter testifies that when this stock was offered to him as security he objected; that he asked Shipherd to transfer it into stock of the Cleveland City Railway Company, the defendant, and that Mr. Shipherd said, no, he could not do that because he didn't have the money required to pay his proportionate share of the floating debt of that company, referring to the terms of the contract of consolidation which provided that each stockholder of the cable company was to stand his proportionate share of the floating debt of that company, which was to be paid before he could receive his proportionate shares of stock in the new company, and said to Painter, "you take the stock and you can pay it, and I will issue to you the stock of the new company in lieu thereof," or words to that effect.   Relying on this promise, Painter took the stock of the cable company for Mr. Worthington as security for the bonds loaned to Shipherd in the name of Charles H. Potter & Company.

It is clear, therefore, that the transfer agent, Shipherd, was not performing or doing any act for either of these companies; he was simply acting for himself in his individual capacity and

for his personal benefit, or for the benefit of the company that he represented, located in Columbus, and how can the Cleveland City Railway Company, the defendant, be responsible for that declaration, and be compelled to issue stock in lieu of such cable company stock, or to pay its value? Under what circumstances would the declaration of Mr. Shipherd as its transfer agent bind the defendant company?

It would only bind the company in case he was acting for it, so as to constitute the declaration a part of the *res gestae*— a part of the act itself. This rule is stated in the brief of the eminent counsel for the plaintiff in this case. In his brief he refers to the case of *Union Cent. Life Ins. Co.* v. *Cheever*, 36 Ohio St., 201, 208, and to the opinion delivered by himself while he was a distinguished member of the Supreme Court of this state, as follows:

"It is because the declaration of an agent is a verbal act and part of the *res gestae*, that it is admissible, and whenever what he did is admitted in evidence then it is competent to prove what he said about the act while he was doing it."

In that case it was held that Cheever was not acting for his wife at the time he made the declaration, and, therefore, his declaration did not bind her and was not admissible against her. Well, let us apply that rule here. What was Shipherd doing for the defendant company? If he was acting solely for himself, endeavoring to make a contract with Worthington for his own benefit, or the benefit of the Columbus City Railroad Company, how is his declaration a part of the *res gestae* of any act done for the defendant, and admissible against it? He must have been acting for the defendant at the time, doing some act for it, transacting its business, or his declarations are not admissible against it. The universal rule is, the declarations of an agent are only admissible against the principal when made in performing the business of the principal, or professing to act for the principal in the doing of some act within the apparent scope of his authority.

Now, in this case, Mr. Worthington, or Mr. Painter, as representing him, did not go to either the office of the defend-

ant or the agent of the defendant for the purpose of obtaining information upon which he might rely in the making of a contract with some third party in regard to this stock. He went to find John J. Shipherd, who in the contract, as appears from the testimony, represented the Columbus City Railway Company, if he represented anyone but himself, for the purpose of loaning to Shipherd, or to the Columbus City Railway Company, these bonds, and receive in security therefor whatever Mr. Shipherd might offer. Shipherd offered stock of another company first, and subsequently offered this stock of the Cleveland City Cable Railway Company, and this declaration was made simply to induce Mr. Painter to enter into a personal contract with him, John J. Shipherd.

That declaration therefore is not · admissible as testimony against the defendant, as it had no relation to any act that Shipherd was performing for the defendant, and could not be any part of the *res gestae* of an act done for the defendant.

But aside from this there is still another complete objection to plaintiff's action. In cases where the declaration of an agent is sought to be used to bind a principal, it can only be used in favor of an innocent *bona fide* party or purchaser. Was Worthington of that character of person or party? He was chargeable with whatever knowledge the party to whom he turned over his business to transact for him had—chargeable with whatever knowledge Mr. Painter had, who was to transact the business for him, whom he authorized to loan the bonds and to select and approve the security. Was he, therefore, a *bona fide* innocent party?

Under such circumstances a purchaser is not an innocent *bona fide* party entitled to rely upon statements made, when the facts known to his agent would put him upon inquiry, and still more so, if such facts would make it apparent that the stock offered to him was spurious. How was it in this case? Painter had knowledge of all the conditions surrounding the transaction; he not only knew that the consolidation had taken place in June, 1893, and was perfected by the election of directors in January, 1894—he not only knew that—but he was a stockholder of one of the constituent companies the Woodland

Avenue & West Side Company, and he had had his stock transferred immediately after the consolidation. He knew all the circumstances and the conditions of this contract of consolidation. He knew when the directors were elected; he was a stockholder in the new company at that time, and undoubtedly voted at such election. He is chargeable with all the knowledge which the law would give him, of the effect of such consolidation; and plaintiff can not escape that, as the knowledge of such an agent is imputed to his principal.

Now, what was the effect of the consolidation? Counsel on both sides refer to Section 3384, Revised Statutes, which all parties agree and claim applies to and governs the consolidation of street railroads, and it provides:

"Upon the election of the first board of directors of the company created by the agreement of consolidation, all and singular, the rights, privileges, and franchises of each of the companies to the agreement, and all the property, real, personal and mixed, and debts due on account of subscriptinos of stock, or other things in action, shall be deemed to be transferred to and vested in such new company, without further act or deed; all property, rights of way, and other interests, shall be as effectually the property of the new company as they were of the companies parties to the agreement; the title to real estate, either by deed, gift, grant, or by appropriations under the laws of this state, shall not be deemed to revert or be impaired by reason of the consolidation; but all rights of creditors, and all liens upon the property of either of such companies, shall be preserved unimpaired, and the respective companies may be deemed to be in existence to preserve the same."

It is only, therefore, as to creditors that the constituent companies remain alive. The rights, privileges and franchises of each were transferred to, and vested in, the consolidated or new company, and consequently were forever gone from those constituent companies, and the constituent companies remained in existence only so far as their creditors were concerned, and to preserve unimpaired liens upon their property.

In *State* v. *Sherman*, 22 Ohio St., 412, it was held, in the third head of the syllabus:

"Where a corporation, in pursuance of an act of the Legislature, transfers or conveys its franchise to be a corporation to others, the transaction, in legal effect, is a surrender or abandonment of its charter by the corporation, and a grant by the Legislature of a similar charter to the transferees or purchasers; and the charter so granted is subject to all the provisions of the constitution existing at the time it is so granted."

So that beyond doubt, when the first board of directors of the new company was elected and installed, from that moment every right, power, privilege and franchise of the constituent companies was abandoned, and their charters surrendered to the new company, and their existence terminated, save only so far as the rights of creditors were concerned.

Mr. Worthington, through his agent, therefore, knew that the cable company had transferred and surrendered its charter and corporate power in January, 1894, and from that time on, the power to issue stock by the Cleveland City Cable Company had been surrendered and transferred along with all of its other franchises to the consolidated company. Yet, through Mr. Painter, he received certificates of stock which he now seeks to enforce against this defendant company, that purport on their face to have been issued by the Cleveland City Cable Company to John J. Shipherd from a year to a year and a half after the election of this board of directors, and after the surrender of its franchise and powers and rights to the new company

Upon the face of these certificates, therefore, it was apparent that the stock was spurious. What inquiry did he make in regard to it? All the inquiry Painter testified he made, was to go to a certain bank to find out whether the bank had received some of the Cleveland City Cable Company stock as security, and finding that the bank had taken some stock of that company as security, he took this. He never even asked Shipherd, "How does it come, Mr. Shipherd, that, a year and a half after this consolidation and election of directors, this cable company can issue stock? Of this stock you are offering me, one part is dated January, 1895, and the other along in October and November, 1895, from a year to a year and a half after the election of these directors—how does it come that it issued this

stock? How is that valid?" He made no inquiry in that regard. All he did, was to inquire at some bank if it had received as collateral, stock of the cable company. Plaintiff was not, therefore, an innocent and *bona fide* purchaser.

For these reasons, the judgment will be in favor of the defendant, and the petition of the plaintiff dismissed.

*W. W. Boynton,* for plaintiff.

*Squire, Sanders & Dempsey,* for defendant.